BERDIE LEE BARKSDALE

*v.*

STATE OF TENNESSEE

(*Jackson,* April Term, 1956)

Opinion filed June 8, 1956.

HUGHIE RAGAN, Jackson, for plaintiff in error.

NAT TIPTON, Advocate General, for the State.

Mr. Justice Tomlinson delivered the opinion of the Court.

In 1951 the home (probably a one or two room cabin) of Berdie Lee Barksdale was destroyed by fire. Her two children, three years and fourteen months of age, respectively, were burned to death in that fire. As a result, she was indicted in 1955, and convicted of murder in the first degree with a sentence of life imprisonment. She has appealed.

Perhaps it should be explained that it was while she was being questioned in 1955 about other matters that the facts of this case were first developed.

She signed a written confession wherein she admitted that she set this house on fire for the purpose of destroying these children. The Trial Court found upon quite substantial evidence that this confession was voluntarily made. Hence, it was admitted in evidence.

While she was being questioned in 1955 by the officers as to this offense, one of the officers said to her, and he so admits, that "it would be better for her to tell the truth". One of the two questions made by the assignments of error is whether that statement renders the confession inadmissible in evidence, as insisted in her behalf.

The Courts of this country are divided upon the question. The text of 20 American Jurisprudence, page 438, section 508, says the sounder rule is that such a statement by an officer does not, *per se,* render the confession

involuntary. An unusually well reasoned case so holding is *State v. Gee Jon,* 46 Nev. 418, 211 P. 676, 30 A.L.R. 1443. It cites decisions of several jurisdictions likewise so holding.

*State v. Tomassi,* 137 Conn. 113, 75 A.2d 67, 74, is the latest decision on this question that this Court finds. There the officer told the defendant to " 'tell the truth and he (the assistant State's Attorney) will treat you right' ". In holding that this statement did not render the confession inadmissible the Court said:

"" \* \* \* by 'the great weight of better reasoned authority' such a statement made to the accused does not render his confession inadmissible", citing numerous cases, and continuing viz.:

"" \* \* \* 'As has been well said, such advice ''cannot possibly vitiate the confession, since by hypothesis the worst that it can evoke is the truth, and there is thus no risk of accepting a false confession." ' "

As observed by one Court, it does seem illogical to think that a person would confess a crime which he did not commit, simply in response to an admonition of an officer that it would be better for that person to tell the truth. On the other hand, the annotator in 18 L.R.A., N.S., page 816, in discussing the effect of such a statement, and quoting from an English decision, aptly observes that "The words, 'You had better tell the truth', seem to have acquired a sort of technical meaning importing either a threat or a benefit".

In our case of *Ann v. State,* 30 Tenn. 159, the defendant was told that "she had better come out and tell the truth—it would be better for her". It was held that this recommendation to her rendered the confession involun-

tary. However, in so holding the Court said as to this sixteen year old negro girl that:

"Nor would it be more profitable to indulge in speculation as to the probable influence of such a promise, or threat, in a particular case; certainly not in the case of a timid girl, of tender age, ignorant and illiterate, a slave and in chains, whose life had been threatened by her master, and against whom the hand of every one, even those of her own color and condition, seems to have been raised."

*Ann v. State, supra,* is not authority for a similar holding in the case at bar where the surrounding facts are so different. The plaintiff-in-error here is a negro woman as in *Ann v. State,* but she is between 25 and 30 years of age, and had attended high school. Her signature indicates that she is a person of at least a fair education. The physical surroundings under which she was questioned were not conducive to the begetting of fear. Although she was not called as a witness in the trial before the jury, she was examined in connection with the Court's investigation as to the circumstances under which she made the confession. Her testimony there indicates that she is a person of intelligence.

Principle, as well as better reasoned persuasive precedent, is that a confession is not rendered inadmissible under the aforestated circumstances of this case by reason of the officer informing the confessor that "it would be better for you to tell the truth". To hold otherwise would be to make a fetish of the rule which excludes confessions made under promise of reward or fear of punishment.

Finally, it is insisted that the *corpus delicti* has not been established. Presumably, this is based on the theory

that there is no substantial evidence thereof other than the confession.

■ A confession, standing alone, is not sufficient to establish the *corpus delicti.* But that fact may be established by the confession taken in connection with other satisfactory evidence, direct or circumstantial. *King v. State,* 187 Tenn. 431, 434, 215 S.W.2d 813.

■ Aside from the confession, the evidence in this case establishes the fact that these children lived with their mother in the house, wherein they were burned to death on December 27, 1951. During that Christmas week they were seen with their mother by other people. After the fire a funeral was conducted over what was supposed to be the bones of these children. There is no indication that the mother suggested then that these were not the remains of her children. If they had not been at home that afternoon she would have known it. One witness testified that she made the statement that ''the children were inside the house when it burned''. A deputy sheriff arrived on the scene about the time the house had finished burning. The embers were still there. His testimony is that ''we finally spotted those two little bodies—and pulled them out of the fire'', meaning the bones.

This is sufficient evidence in corroboration of the statements made in the confession of the mother to justify the jury in finding that these children were burned to death in that fire.

Affirmed.