# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 17, 2004 Session

## STATE OF TENNESSEE v. JAMES MICHAEL MOFFITT

### Appeal from the Criminal Court for Hamblen County
### No. 02CR164     James E. Beckner, Judge

---

### No. E2003-01614-CCA-R3-CD - Filed December 13, 2004

---

The defendant, James Michael Moffitt, appeals from the Hamblen County Criminal Court's imposition of a conviction of rape and a sentence of ten years in the Department of Correction. On appeal, he challenges the sufficiency of the convicting evidence and the propriety of a ten-year sentence. Because the conviction is unsupported by sufficient evidence establishing the *corpus delicti*, we reverse the conviction and dismiss the indictment.

### Tenn. R. App. P. 3; Judgment of the Criminal Court is Reversed.

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Jack T. Marecic, Rogersville, Tennessee, for the Appellant, James Michael Moffitt.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Paige Collins, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

In July 2002, a detective with the Morristown Police Department received a complaint that caused her to investigate whether the defendant had sexually assaulted B.M., the defendant's mentally-retarded, young adult son.[1] She interviewed and obtained a written statement from the defendant. The statement, which was admitted into evidence, said:

> Sometime in April I picked up [the victim] . . . around 2:00 p.m. We
> stopped by the cemetery where my mother is buried in Virginia and
> then we went to Kingsport and spent the rest of the day. We got back

---

[1]Even though the victim of the charged offense was not a minor, we decline to express his name in the opinion.

to 918 North Church Street around 8 o'clock. We'd been home about thirty to forty minutes when [the victim] took off his pants and laid down in the living room floor. He wanted me to touch his penis, so I did suck his penis but only for a few minutes. I then got up and went to the bathroom. I told [the victim] that what we were doing was not right. I went to the bathroom, washed my hands. And when I ignored him he finally put his clothes on.

The state offered medical proof that the victim suffers from Lenox-Gasto Syndrome, a severe from of epilepsy involving recurrent seizures and "mental subnormality." A physician testified that the victim is severely mentally retarded but is at times able to communicate.

Testifying for the defense, Mittie Moffitt, the victim's mother and the defendant's ex-wife, testified that she had known the defendant for 25 years, although they had divorced in November 2001. She testified that she had never known the defendant to behave inappropriately with any of their four children, including the victim. In terms of social norms, the victim had experienced difficulty in managing his sexuality. He had masturbated in view of other persons, both indoors and outdoors, and had been brought home by police officers after episodes of indecent exposure. She recalled that in April or May 2002, the defendant picked up the victim for a day trip and returned with him about 9:00 p.m.

Based upon the above evidence, the state convicted the defendant of rape.

First, we address the state's argument in its brief that the appeal should be dismissed because the motion for new trial was filed one day late and that, consequently, the notice of appeal was untimely. *See* Tenn. R. Crim. P. 33(b) (establishing 30-day period for filing motion for new trial); Tenn. R. App. P. 4(a) (establishing 30-day period, "after the date of entry of judgment," for filing notice of appeal). The motion for new trial was filed 31 days after the trial court filed its judgment, but after consulting a 2003 calendar, we find that the 30th day, April 20, 2003, fell on a Sunday. Thus, the motion for new trial and the notice of appeal were timely, and in its oral argument before the court, the state conceded as much. *See* Tenn. R. Crim. P. 45(a) (in computing time pursuant to the Rules, the "last day of the period . . . shall be included unless it is a . . . Sunday").

In his first issue, the defendant challenges the sufficiency of the convicting evidence, focusing especially upon the paucity of evidence establishing the *corpus delicti*.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985).

In determining the sufficiency of the evidence, this court should not reweigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Cabbage,* 571 S.W.2d at 835.

As alleged in the indictment, rape is committed by one who unlawfully sexually penetrates a victim, or who is likewise penetrated by the victim, when the person "knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless." Tenn. Code Ann. § 39-13-102(a)(3) (2003).

It is apparent that the defendant's statement admitted into evidence and the medical testimony describing the victim's mental incapacity address the elements of the crime of rape. It "is certainly a sound statement of law," however, that "the *corpus delicti* can not [sic] be proved by the confession alone." *Wooten v. State*, 203 Tenn. 473, 481, 314 S.W.2d 1, 5 (1958). "*Corpus delicti*" literally means the body of the crime. *State v. Shepherd*, 862 S.W.2d 557, 564 (Tenn. Crim. App. 1992). The *corpus delicti* consists of two elements: (1) a certain result has been produced, and (2) some person is criminally responsible for the act. *See id.* Expressing what was described as "the great weight of authority," our supreme court has said that,

> while the *corpus delicti* cannot be established by confessions alone, yet the confessions may be taken in connection with other evidence, direct or circumstantial, corroborating them, and, if from all of the evidence so considered together the *corpus delicti* and the guilt of the person with reference thereto is established beyond a reasonable doubt, it is the duty of the jury to convict.

*Ashby v. State*, 124 Tenn. 684, 697-98 139 S.W. 872, 875 (1911); *accord State v. Buck*, 670 S.W.2d 600, 609 (Tenn. 1984); *King v. State*, 187 Tenn. 431, 434 215 S.W.2d 813, 814 (1948). "[The corroborating] evidence is sufficient if . . . it tends to connect the defendant with the commission of the offense, although the evidence is slight, and entitled, when standing by itself, to but little consideration." *State v. Smith*, 24 S.W.3d 274, 281 (Tenn. 2000) (quoting *Ricketts v. State*, 192 Tenn. 649, 654-55, 241 S.W.2d 604, 606 (1951)). "Whether the state has sufficiently established the *corpus delicti* is primarily a jury question." *State v. Jones,* 15 S.W.3d 880, 891 (Tenn. Crim. App. 1999). All elements of the *corpus delicti* may be established by circumstantial evidence. *State v. Garmon*, 972 S.W.2d 706, 708 (Tenn. Crim. App. 1998).

In the present case, the only corroborating circumstance the state cites is Mittie Moffitt's testimony supporting the defendant's statement that he picked up the victim one day in

April or May 2002 from the address where Ms. Moffitt and the victim lived at the time. From this fact, the state argues that it showed opportunity, or proximity of the defendant to the victim. It claims that such evidence sufficiently corroborates the defendant's confession. We disagree.

We have reviewed the Tennessee cases that have adjudicated claims of insufficient *corpus delicti* evidence, and we have found none in which mere opportunity or proximity of the defendant to the victim was found to be sufficient to corroborate a defendant's confession. None of the various corroborating circumstances featured in the cases is present in this case. For instance, there was no "independent evidence that the appellant engaged in various sexual acts with [the victim] during the time period charged in the indictment [so as to] corroborate[] his confessions to engaging in a specific act of oral intercourse with [the victim]." *State v. Ellis,* 89 S.W.3d 584, 600 (Tenn. Crim. App. 2000). There was no testimony or prior statements from the victim. *See Smith*, 24 S.W.3d at 281. There was no physical evidence corroborating the offense. *See State v. Ervin*, 731 S.W.2d 70, 72 (Tenn. Crim. App. 1986).

We observe that, in the context of the evidence introduced at trial, the defendant's knowledge of the victim's address or his proximity to the victim were not such rare or exceptional circumstances as to suggest that he raped the victim. The defendant is the victim's father, and until a few months before, when the defendant and Mittie Moffitt divorced, the defendant had apparently been a part of the family unit throughout the victim's life. During this time, Mittie Moffitt noticed no improper behavior of the defendant directed toward any of the couple's children, including the victim. To be sure, the evidence contained no proof that the defendant only rarely exercised visitation with the victim. In short, the defendant's proximity to the victim or presence at his home is unremarkable.

"A confession may sustain a conviction *where there is other evidence sufficient to show the commission of the crime by someone*." *State v. Jones,* 15 S.W.3d 880, 891 (Tenn. Crim. App. 1999) (emphasis added) (citing *Taylor v. State*, 479 S.W.2d 659, 661-62 (Tenn. Crim. App. 1972)). That showing is absent in the present case. Other than the defendant's confession, the record is utterly devoid of any evidence that an offense was committed.

The result is that the conviction must be reversed and the indictment dismissed. Despite the reversal of the conviction, we shall address the defendant's claims that the trial court erroneously applied sentencing enhancement factors and declined to apply a mitigating factor.

The presentence report revealed that the 49-year-old defendant had no record of prior convictions. In the sentencing hearing, the investigating officer testified on behalf of the defendant that the defendant was cooperative throughout the investigation of the case and that the victim appeared to have sustained no injuries from the commission of the offense. Mittie Moffitt testified that the defendant had been a good father to and provider for the couple's children and that he had received numerous commendations for his work on behalf of various charities. She testified that the victim had told her that the defendant had once performed oral sex on the victim and had anally penetrated him. Julie Moffitt testified that she had never known her father to behave inappropriately

toward any of the children in the family. The victim had never complained to her of any such misbehavior.

The trial court applied factors (8) and (16) to enhance the defendant's sentence from the minimum of eight years to a mid-range sentence of ten years. *See* Tenn. Code Ann. § 40-35-114(8), (16) (2003) ("(8) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement"; "(16) The defendant abused a position of public or private trust"). The trial court declined to mitigate the sentence based upon the offense neither causing nor threatening serious bodily injury. *See id.* § 40-35-113(1) (2003). The trial court afforded the defendant some mitigation for having "reached an age of maturity [without having] prior convictions other than a traffic offense."

First, we examine the use of factor (8). In applying factor (8), the trial judge merely commented that "[f]rom all the facts and circumstances in this case, I find that [(8)] is an applicable enhancement factor." The desire for pleasure or excitement may not be inherently presumed from the act of rape. *State v. Adams,* 864 S.W.2d 31, 35 (Tenn. 1993). The state bears the burden of demonstration that the rape was sexually motivated or otherwise was the result of the defendant's desire for pleasure or excitement. *Id.* "Essential to proper application of this factor is the determination of the defendant's motive for committing the offense." *State v. Arnett*, 49 S.W.3d 250, 261 (Tenn. 2001). "Accordingly, proper application of factor [(8)] requires the State to provide additional objective evidence of the defendant's motivation to seek pleasure or excitement through sexual assault." *Id.* at 262; *see State v. Spratt*, 31 S.W.3d 587, 608 (Tenn. Crim. App. 2000) ("In this case, the State failed to introduce any evidence from which it can be inferred that the aggravated rape was committed to gratify Defendant's desire for sexual pleasure or excitement, rather than any number of other reasons such as a desire to intimidate, coerce, or simply abuse the victim.").

We find nothing in the record to support a finding that the rape of the victim was the result of the defendant's desire for pleasure or excitement. Therefore, we must conclude that the state failed to carry its burden of establishing a basis for applying factor (8), and we hold that it does not apply.

We hold, however, that factor (16) applies. In applying factor (16), the judge referred to the victim's having the mind of a two-year-old and being the defendant's son. The defendant, as the victim's natural father, was aware that, in taking the severely mentally retarded victim away from home, he was responsible for the victim's care and safekeeping. In such circumstances, a rape of his charge is clearly an abuse of the defendant's position of trust. *State v. Leggs*, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

The trial court declined to apply as a mitigating factor that the defendant's conduct "neither caused nor threatened serious bodily injury." *See* Tenn. Code Ann. § 40-35-113(1) (2003). The judge said, "There's no way to measure [emotional injury] in this case with this boy who suffers seizures and has the mind of a two-year-old. But . . . it would be wrong for this Court to find that

-5-

he was caused no or threatened no serious bodily injury from this rape." This court has construed the phrase "serious bodily injury" contained within section 40-35-113(1) to include psychological injury. *See State v. Michael Anthony Maddox*, No. M2000-00193-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Jackson, Sept. 22, 2000); *State v. Smith*, 910 S.W.2d 457, 461 (Tenn. Crim. App. 1995). The facts of the present case supply a basis for the trial court's finding that the defendant's conduct as found by the jury threatened serious bodily injury to the mentally retarded victim. *See State v. McKnight*, 900 S.W.2d 36, 55 (Tenn. Crim. App. 1994) (rejecting mitigating factor (1) when defendant's crimes involved sexual abuse of minors). Thus, the trial court did not err in rejecting mitigating factor (1).

We believe that the trial court properly attached significant weight to enhancement factor (16), and in our view, that factor justifies the two-year enhancement to the mid-range sentence of ten years, despite the application as a mitigating factor that the defendant had sustained no prior convictions. Were it not for the impact of *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004), we would find no reversible flaw in the court's sentence.

Pursuant to *Blakely*, the trial judge's finding of an abuse of a public or private trust as a means of enhancing the sentence violates the defendant's right to trial by a jury, in the absence of a waiver of jury trial or the defendant's admission of the fact relied upon. *Id.* at ___, 124 S. Ct. at 2537. *Blakely* appears to apply to the case at bar, *see Schriro v. Summerlin*, 542 U.S. ___, 124 S. Ct. 2519 (2004), and eliminates the use of the one enhancement factor that we have found to be applicable pursuant to state law. Thus, were there a conviction to result in sentencing, we would be constrained to modify the sentence to eight years. Because the trial court did not consider probation (on the ground that, with a ten-year sentence, the defendant was ineligible for probation), we would have remanded the cause for the trial court's consideration of probation. *See* Tenn. Code Ann. § 40-35-303(b) (2003) (trial court required to "automatically" consider probation when defendant is sentenced to eight years or less).

In conclusion, we reverse the defendant's conviction of rape and dismiss the indictment. Had the conviction been affirmed, we would have modified the sentence to eight years and remanded for consideration of probation or other alternative sentencing options.

_____
JAMES CURWOOD WITT, JR., JUDGE